IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BOSC, INC., and THOMAS WAYNE
HAYES,

    Plaintiffs/Counterdefendants,

vs.                                                Civ. No. 15-1042 KG/LF

BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF BERNALILLO,

    Defendant/Counterclaimant.

MEMORANDUM OPINION AND ORDER

       This matter comes before the Court upon Plaintiffs' Motion for Preliminary Injunction and Brief in Support (Motion for Preliminary Injunction), filed on November 16, 2015. (Doc. 3). Defendant/Counterclaimant (the Board) filed a response on December 7, 2015, and Plaintiffs/Counterdefendants (collectively, BOSC) filed a reply on December 15, 2015. (Docs. 16 and 20). On December 16, 2015, the Court held a telephonic hearing on the Motion for Preliminary Injunction. Present at the telephonic hearing were Benjamin Thomas, Frederic Dorwart, and Jared Burden who represented BOSC, and Patrick Griebel and Robert Kidd who represented the Board. Having considered the Motion for Preliminary Injunction, the accompanying briefs, and the oral argument presented at the telephonic hearing, the Court denies the Motion for Preliminary Injunction.

**A. Background**

       **1. Procedural history**

       On July 27, 2015, the Board sued BOSC and others, including Oppenheimer & Co., Inc., in state court for violating Rule 2111 of the Financial Industry Regulatory Authority (FINRA).

The Board brought seven causes of action against BOSC. The Board, however, did not serve the complaint on BOSC because the Board's attorney, Clinton Marrs, had not yet determined whether arbitration was permissive or mandatory under the FINRA's arbitration code.

Despite not being served, BOSC removed the state court lawsuit to federal court on September 1, 2015, and moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) on September 18, 2015. Oppenheimer also moved to dismiss. The Board's attorney was still in the process of conferring with the Board regarding arbitration when the responses to the motions to dismiss became due. The Board's attorney felt compelled to respond to avoid a summary dismissal of the lawsuit because he had not yet decided on whether to pursue arbitration. The parties fully briefed the motions to dismiss by October 15, 2015.

On October 19, 2015, the Board voluntarily dismissed the complaint without prejudice before the federal judge could rule on the motions to dismiss. Mr. Marrs decided to dismiss the complaint at that time because he had concluded that the Board could purse its claims before the FINRA Dispute Resolution. Consequently, on October 23, 2015, the Board initiated arbitration under FINRA. BOSC's answer to the statement of claim before the FINRA Dispute Resolution is due December 22, 2015.

On November 16, 2015, BOSC filed this lawsuit against the Board for preliminary and permanent injunctive relief to enjoin the Board from pursuing FINRA arbitration. BOSC alleges that the Board waived its right to arbitration when it filed the state lawsuit. BOSC also seeks a declaratory judgment to that effect. In response to BOSC's lawsuit, the Board filed a counterclaim to compel arbitration. BOSC now moves for a preliminary injunction to prevent the Board from going forward with the FINRA arbitration on the basis of the Board's waiver. The Board also moves to compel arbitration. (Doc. 15).

In a related matter, on November 20, 2014, prior to the Board filing the state lawsuit, the New Mexico Securities Division filed, in a single action, Notices of Contemplated Action against BOSC and Oppenheimer. The Board was not a party to this administrative action. Discovery, including the deposition of witnesses, took place in the New Mexico Securities Division case while the Board's state lawsuit against BOSC was pending.

**2. Arbitration rules and law**

The parties do not dispute that the FINRA rules apply to them. Under FINRA Rule 12200, the Board, as a customer, has the option to request arbitration under the FINRA arbitration code. (Doc. 16-7). Moreover, the parties do not dispute that the Federal Arbitration Act (FAA), 9 U.S.C. § 1, et seq., governs the arbitration claims. Under the FAA, written agreements to submit to arbitration are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

**B. Discussion**

To establish that a preliminary injunction is necessary, BOSC must show that (1) it has a substantial likelihood of prevailing on the merits; (2) it will suffer irreparable injury if it is denied the injunction; (3) its threatened injury outweighs the injury that the opposing party will suffer under the injunction; and (4) an injunction would not be adverse to the public interest. *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1283 (10th Cir. 1996). The Court finds that it is only necessary to address the first preliminary injunction requirement, the substantial likelihood of prevailing on the merits, to resolve the Motion for Preliminary Injunction. Accordingly, the issue is whether there is a substantial likelihood that the Board waived its right to arbitration.

**1. Whether Section 2 of the FAA precludes waiver of the right to arbitrate**

The Board argues as an initial matter that Section 2 of the FAA precludes waiver of the right to arbitrate and requires arbitration as a matter of law. The Board notes that Section 2 allows a party to escape arbitration only if the arbitration provision is revocable, i.e., that the arbitration provision is unlawful on the basis of fraud in the inducement, unconscionability, or duress. BOSC does not contend that the FINRA arbitration provision is revocable.

Although the United States Supreme Court in *Southland Corp. v. Keating*, 465 U.S. 1, 10-11, held in 1984 that Section 2 limits enforceability of arbitration provisions to only those which are revocable, per the language of Section 2, recent case law indicates that courts apply the concept of waiver to FAA cases. *See, e.g. In re Cox Enterprises, Inc. Set-Top Cable Television Box Antitrust Litig.*, 790 F.3d 1112, 1115 (10th Cir. 2015) (applying waiver doctrine in FAA case); *Tech. in P'ship, Inc. v. Rudin*, 538 Fed. Appx. 38, 40 (2d Cir. 2013) (finding Section 2 not inconsistent with waiver doctrine); *Erdman Co. v. Phoenix Land & Acquisition, LLC*, 650 F.3d 1115, 1117 (8th Cir. 2011) ("Federal policy favors arbitration as a form of dispute resolution, as reflected in the Federal Arbitration Act. 9 U.S.C. § 1 *et seq.* But a party may waive its contractual right to arbitrate."); *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1200 (11th Cir. 2011) ("Although arbitration agreements governed by the FAA are to be liberally enforced, … courts will not compel arbitration when the party who seeks to arbitrate has waived its right to do so."); *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270 (9th Cir.), *opinion amended on denial of reh'g*, 289 F.3d 615 (9th Cir. 2002) ("waiver of the right to compel arbitration is a rule for arbitration, such that the FAA controls."); *Blake v. Transcommunications, Inc.*, 2001 WL 1739132, *3 (D. Kan. 2001) (FAA allows litigant to waive arbitration).

Following this prevailing case law, including Tenth Circuit case law, the Court concludes that Section 2 of the FAA does not preclude the application of the waiver doctrine.

### 2. Waiver of the right to arbitrate

It is well-established that a party seeking to prove waiver of arbitration bears a heavy burden. *Adams v. Merrill Lynch, Pierce, Fenner & Smith*, 888 F.2d 696, 701 (10th Cir. 1989). The Tenth Circuit in *In re Cox Enterprises, Inc. Set-Top Cable Television Box Antitrust Litig.*, recently summarized the law of waiver in the Tenth Circuit as follows:

> Under the Federal Arbitration Act ("FAA"), agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As such, the FAA "strongly favors enforcement of agreements to arbitrate." *Hill v. Ricoh Ams. Corp.,* 603 F.3d 766, 777 (10th Cir.2010). Were we to have any "doubts concerning the scope of arbitrable issues," we should resolve them "in favor of arbitration." *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.,* 362 F.3d 1288, 1290 (10th Cir.2004) (quotation omitted). This is true "whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).
>
> Our circuit has established a six-factor test to determine if the right to arbitrate has been waived. *Peterson,* 849 F.2d at 467–68. We consider:
>
> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party.
>
> *Id.* at 467–68 (quotations omitted).

790 F.3d at 1115-16.

The Tenth Circuit further noted:

> In employing the *Peterson* factors, we do not apply a "mechanical process in which each factor is assessed and the side with the greater number of favorable factors

prevails." *Hill,* 603 F.3d at 773. "Rather, these factors reflect certain principles that should guide courts in determining whether it is appropriate to deem that a party has waived its right to demand arbitration." *Id.* Importantly, it is well settled that a party "may not play fast and loose with the judicial machinery and deceive the courts," *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir.1974), and "[a]n important consideration in assessing waiver is whether the party now seeking arbitration is improperly manipulating the judicial process," *Hill,* 603 F.3d at 773.

*Id.* at 1116.

### a. Whether the Board took action inconsistent with the right to arbitrate

BOSC cites cases which indicate that filing a lawsuit is inconsistent with the right to arbitration. *See, e.g., Grumhaus v. Comerica Sec., Inc.*, 223 F.3d 648, 650 (7th Cir. 2000) ("a court must presume that a party implicitly waived its right to arbitrate when it chooses a judicial forum for the resolution of a dispute."); *Krauss Bros. Lumber Co. v. Louis Bossert & Sons*, 62 F.2d 1004, 1006 (2d Cir. 1933) ("The state action was indeed a repudiation of the plaintiff's own promise to arbitrate…."). However, in the Tenth Circuit, inconsistent behavior alone is insufficient to show waiver; the party opposing arbitration must also have suffered substantial prejudice from the delay in seeking arbitration. *Adams*, 888 F.2d at 701 (citing *ATSA of Cal. v. Cont'l Ins.,* 702 F.2d 172, 175 (9th Cir. 1983)). In this case, as shown *infra*, BOSC has not suffered substantial prejudice factor. Consequently, the inconsistent behavior factor alone carries little, if any, weight towards a finding of waiver.

### b. Whether the Board substantially invoked litigation machinery and the parties were well into preparation of a lawsuit before the Board notified BOSC of an intent to arbitrate

In addressing this *Peterson* factor, the Tenth Circuit has made clear that "[t]he critical question is what was happening in [the] litigation" prior to the demand for arbitration. *Hill*, 603 F.3d at 775. The following facts show that the Board did not substantially invoke the litigation machinery prior to making its demand for arbitration. First, the Board did not serve the state

complaint. Second, although BOSC had not been served, BOSC took it upon itself to actively pursue litigation by removing the case and filing a motion to dismiss. Third, the Board's attorney was in the process of conferring with the Board regarding arbitration when the responses to the motions to dismiss became due so he felt compelled to respond to the motions to dismiss to avoid a summary dismissal of the lawsuit. Fourth, less than three months elapsed between the filing of the state lawsuit and the filing of the FINRA arbitration claims. Fifth, although discovery occurred in the case before the New Mexico Securities Division, that discovery was unrelated to the Board's pursuit of its state lawsuit. Finally, no discovery was conducted nor were scheduling orders entered, hearings held, or a trial date set in the Board's state lawsuit.

BOSC argues, however, that the Board improperly manipulated the judicial process by bringing arbitrable claims in the state lawsuit. Manipulation occurs when a party wants to see how a case is going in a judicial forum before deciding whether to pursue arbitration as a better alternative. *Id.* at 774. Manipulation includes evidence of delay in deciding to arbitrate until after substantial discovery has been completed or until the eve of trial. *Id.* As noted previously, there was no substantial discovery or delay or even a trial setting in the state lawsuit. Moreover, the fact that Mr. Marrs refrained from serving the complaint so he could determine the propriety of arbitration does not show an improper manipulation of the judicial process. The second *Peterson* factor does not support a determination of waiver.

### c. Whether the Board either requested arbitration enforcement close to the trial date or delayed for a long period

In this case, the judge did not set trial date in the state lawsuit. Additionally, the Tenth Circuit has found that a delay of less than four months does not constitute a waiver. *Hill*, 603 F.3d at 775. BOSC argues, nonetheless, that the Board unduly delayed seeking arbitration by

7

waiting until the motions to dismiss were fully briefed and seeing that the state lawsuit should be dismissed on the merits before deciding to pursue arbitration.  This is a speculative argument.  Without analyzing the motions to dismiss, the Court does not know if the motions to dismiss, in fact, had merit.  Mr. Marrs indicates that he decided to pursue arbitration only after he determined it was proper to do so.  Mr. Marrs made that decision, coincidentally, after the motions to dismiss were fully briefed, less than three months from the filing of the state lawsuit.  The Court does not find that the Board "delayed for a long period" before seeking arbitration.  This *Peterson* factor, likewise, does not support a determination of waiver.

### d.  Whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings

This factor does not directly apply to this case, but BOSC contends that, instead, the Board filed a state lawsuit instead of seeking arbitration.  The other *Peterson* factors address this contention.  Hence, this particular *Peterson* factor is inapplicable to this case.

### e.  Whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place

As stated previously, no discovery took place in the state lawsuit.  BOSC notes, however, that the motions to dismiss and the briefing on those motions constituted an important intervening step.  The Court observes that BOSC and Oppenheimer, not the Board, filed the motions to dismiss even though they were not obligated to do so under Rule 12(6) (motion to dismiss must be made before filing an answer).  Also, considering the circumstances, it was reasonable to expect the Board's attorney to respond to the motions to dismiss.  This *Peterson* factor does not support a determination of waiver.

### f. Whether the delay prejudiced BOSC

The Tenth Circuit has held that this factor requires "substantial prejudice" from the delay in seeking arbitration. *Hill*, 603 F.3d at 775. BOSC argues that it suffered prejudice because (1) it responded to the state lawsuit; (2) the Board dismissed the state lawsuit without prejudice; (3) it cannot move in arbitration to dismiss a claim for failure to state a claim; and (4) Oppenheimer was improperly joined in the arbitration and the FINRA arbitration code does not permit a respondent to obtain relief from the improper joinder of parties.

As discussed above, BOSC instigated the majority of the litigation activity which occurred in the state lawsuit. Moreover, although the Board dismissed the state lawsuit without prejudice, BOSC has failed to persuade the Court that the state lawsuit would have been dismissed with prejudice had a judge ruled on the motions to dismiss. BOSC, therefore, cannot claim that the litigation prejudiced it. Additionally, BOSC's other arguments regarding prejudice amount to complaints about the arbitration process, a process which the Board has no control over and which BOSC must adhere to under FINRA. BOSC has simply not convinced the Court that it suffered from substantial prejudice as a result of BOSC's delay in filing its claims for arbitration. This last *Peterson* factor does not support a determination of waiver as well.

### C. Conclusion

First, the Court concludes that the doctrine of waiver exists within the context of the FAA. Second, the Court concludes that considering BOSC's heavy burden to prove waiver, the federal policy favoring arbitration, and the above *Peterson* factors, BOSC has not shown a substantial likelihood that the Board waived its right to arbitration. Without a substantial likelihood of success on the merits, a preliminary injunction is inappropriate.

IT IS ORDERED that Plaintiffs' Motion for Preliminary Injunction and Brief in Support (Doc. 3) is denied.

_____
UNITED STATES DISTRICT JUDGE